*30 Vroom.*                    Electric Ry. Co. v. Miller.

59 423
64 441
59 423
66 457
59 423
70 349
70 391
70 678

NEW JERSEY ELECTRIC RAILWAY COMPANY, PLAINT-
    IFF IN ERROR, v. GEORGE MILLER, DEFENDANT
    IN ERROR.

Upon a request to charge " that it is the duty of a driver approaching the
    line of a street railway company, where his view is impeded by vehicles
    so that he cannot see up the track, to wait till he reaches a point where
    his sight is not impeded, before going on the track," the trial judge
    instructed the jury that " he ought to be able to see far enough up the
    track to see that he has the right of way; and he has the right of way
    if he *can* get upon the track before the car would reach that point if
    going at a reasonable rate of speed." *Held,* that he should in effect
    have charged that the driver would have the right of way if, proceed-
    ing at a rate of speed which, under the circumstances of the time and
    locality, was reasonable, he should reach the point of crossing in time
    to safely go upon the tracks in advance of the approaching car, the
    latter being sufficiently distant to be checked, and, if need be, stopped
    before it should reach him.

On error to the Passaic Circuit Court.

For the plaintiff in error, *Eugene Stevenson.*

For the defendant in error, *John W. Harding.*

The opinion of the court was delivered by

THE CHANCELLOR.    This was an action for damages occa-
sioned by a collision between a trolley car and a wagon driven
by the plaintiff below, which resulted in the plaintiff being
thrown to the ground and injured.

The plaintiff drove easterly through Ward street, which
opens into and terminates at Railroad avenue, in the city of
Paterson, and upon reaching Railroad avenue drove into it
and upon the tracks of the New Jersey Electric Company
there located, purposing to turn and drive along Railroad
avenue, when the collision occurred.

The judge charged the jury that it was entirely plain that
the plaintiff below had the right of way across the trolley

track as he drove out of Ward street upon Railroad avenue, and that the motorman knew or was bound to know that the plaintiff had the right of way if he chose to go on across the track. He also charged that both the plaintiff below and the motorman were bound to exercise reasonable care to prevent a collision, and that if the jury should find that the plaintiff had contributed to the accident by his negligence, he could not recover.

The effect of these propositions taken together was to lead the jury to the implication that in proceeding to use the right of way, which the charge conceded to him, the plaintiff was not guilty of negligence.

The defendant's counsel was not satisfied with the court's assumption of the fact that the plaintiff had a right of way which he might use without being guilty of negligence, and in order that the jury might pass upon the question whether he had such right, as a question of fact, he requested the court to charge as follows: "That it is the duty of a driver approaching the line of a street railway company, where his view is impeded by vehicles so that he cannot see up the track, to wait till he reaches a point where his sight is not impeded, before going on the track." To this request the judge charged: "He ought to be able to see far enough up the track to see that he has the right of way, and he has the right of way if he can get upon the track before the car would reach that point if going at a reasonable rate of speed." In this definition the auxiliary verb "can" denotes possibility, and the import of the definition is that if, by the quickening of his speed, the driver may be able to reach the crossing before the electric car, if the car should proceed at a reasonable speed, he would have the right of way, in the lawful use of which, as the jury were led to imply in the previous charge, he would be free from negligence. In other words, we think that the jury was given to understand that if the driver of a vehicle, in approaching a trolley crossing in a highway, could, by activity, reach the crossing before the car, if the latter should be run at reasonable speed, he would have the right to proceed upon his way without being guilty of negligence.

The possibility of the acquirement of a superior right by activity is the vicious element in the proposition. Its import is inconsistent with that deliberate exercise of reasonable care which the law requires. It is true, the judge had previously, in his charge, said that the driver must exercise reasonable care, but that part of the charge was not referred to in the special disposition of the request, to qualify the proposition of the judge. We think that the proposition should, in effect, have been, that the driver would have the right of way if, proceeding at a rate of speed which, under the circumstances of the time and locality, was reasonable, he should reach the point of crossing in time to safely go upon the tracks in advance of the approaching car, the latter being sufficiently distant to be checked, and, if need be, stopped, before it should reach him.

In the particular indicated, an error injurious to the defendant below was committed.

There must be a *venire de novo.*

MAGIE, J. (dissenting). I find it impossible to give to the instruction complained of the meaning attributed to it by the majority of the court.

The instruction was given upon a request to charge (in substance) that a driver of a vehicle when approaching a street railway at a place where his view is impeded by other vehicles, ought to wait until his view is no longer thus impeded, before going on the track.

To this request the judge replied : " That I charge to this extent. He ought to be able to see far enough up the track to see that he has the right of way, and he has the right of way if he can get upon the track before the car would reach that point if going at a reasonable rate of speed."

Taken in connection with the request, this instruction plainly meant that a driver under the circumstances supposed, ought to reach a point so near to his proposed crossing of the railway that he could see without impediment far enough up the track to form a judgment whether he could drive upon

the track before an approaching car, running at a reasonable rate of speed, would reach that place; if he could do so he had the right of way and the car must yield to his crossing.

I think the instruction must have been understood in this sense by the jury, and that it correctly stated the law governing the rights of vehicles crossing each other's course in a public street.

*For affirmance*—LIPPINCOTT, MAGIE, BOGERT, DAYTON, HENDRICKSON.   5.

*For reversal*—THE CHANCELLOR, DEPUE, GUMMERE, LIPPINCOTT, VAN SYCKEL, KRUEGER, NIXON.   7.